# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| **BARBARA JOHNSON, Individually** | : | |
| **and as Executrix of the Estate of** | : | |
| **CHARLES EDWARD JOHNSON,** | : | |
| **Deceased, DONNA SHORT and** | : | |
| **WILLIAM JOHNSON,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **Case No. _____** |
| **-vs-** | : | |
| | : | **JURY DEMAND** |
| **SELECT SPECIALTY HOSPITAL-** | : | |
| **NASHVILLE, INC.,** | : | |
| **SELECT MEDICAL HOLDINGS** | : | |
| **CORPORATION, and STEPHEN J.** | : | |
| **HEYMAN,** | : | |
| | : | |
| **Defendants.** | | |

## COMPLAINT

COME NOW THE PLAINTIFFS, BARBARA JOHNSON, Individually

and as Executrix of the Estate of CHARLES EDWARD JOHNSON, Deceased,

DONNA SHORT and WILLIAM JOHNSON, by and through their undersigned

counsel, and for their Complaint against the defendants, SELECT SPECIALTY

HOSPITAL – NASHVILE, INC., SELECT MEDICAL HOLDINGS

CORPORATION and STEPHEN J. HEYMAN, M.D., would state and allege and

follows.

# I.
## INTRODUCTION

1.     This action seeks damages for the personal injuries and prolonged physical suffering endured by the deceased, CHARLES JOHNSON, arising out of the negligence and carelessness of the Defendants in their failure to provide proper medical care and assisted living services.

# II.
## JURISDICTION

2.      Jurisdiction in this action is based on diversity of citizenship pursuant to 28 U.S.C. § 1332.   The Plaintiffs are citizens of a foreign state, and the events which led to the injuries complained of herein occurred within this judicial district and resulted in damages in excess of $75,000.  Venue is properly before this Court by virtue of the fact that the Defendants either reside in or operate a hospital in Nashville, Tennessee, and all of the actions relevant to this case occurred within this judicial district.

Case 3:07-cv-00012     Document 1     Filed 01/03/07     Page 2 of 22 PageID #: 5

## III.
## PARTIES

3.    Plaintiff Barbara Johnson is an adult citizen and resident of the Commonwealth of Kentucky, and she brings this action both individually and on behalf of the Estate of Charles Edward Johnson, as the duly appointed Executrix of his Estate pending before the District Court of Edmonton County, Kentucky, Case No. 06-P-00080.   At all times relevant to this action, Charles Edward Johnson ("Charles Johnson") was a resident of Edmonton County, Kentucky.

4.    Plaintiff Donna Short brings this action individually, as the daughter of Charles Johnson.  Donna Short is and was at all times relevant to this action an adult citizen and resident of Edmonson County, Kentucky.

5.    William Johnson brings this action individually, as the son of Charles Johnson. William Johnson is and was at all times relevant to this action an adult citizen and resident of Warren County, Kentucky.

6.    Defendant Select Specialty Hospital – Nashville, Inc. ("Select Specialty") is incorporated under the laws of the State of Delaware with its principal place of business located at 4716 Old Gettysburg Road, Mechanicsburg, Pennsylvania 17055.   Select Specialty is a for-profit corporation that is purportedly designed to serve the needs of long-term stay acute patients and patients that require intensive medical rehabilitation care. Select Specialty is owned and controlled by its parent company, Select Medical Holdings

3

Corporation. At all time relevant to this action, Select Specialty was licensed to do business and operate a hospital in the State of Tennessee. Select Specialty's agent for service of process is CT Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, Tennessee 37929-9710.

7. Defendant Select Medical Holdings Corporation ("Select Medical"), is incorporated under the laws of the State of Delaware with its principal place of business located at 4716 Old Gettysburg Road, Mechanicsburg, Pennsylvania 17055. Select Medical is a for-profit corporation that owns specialty hospitals purportedly designed to serve the needs of long-term stay acute patients and patients that require intensive medical rehabilitation care. Select Medical is the owner and parent company of the defendant, Select Specialty, exercises control over Select Specialty, and is liable for Select Specialty's misconduct, as well as its own independent misconduct. At all times relevant to this action, Select Medical, by and through Select Specialty, was licensed to do business and operate a hospital in the State of Tennessee. Select Medical's agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

8. At all relevant times mentioned herein, Select Specialty and/or Select Medical owned, operated, and controlled the treatment facility where the deceased, Charles Johnson resided, either directly or through the agency of each other and other diverse subalterns, agents, subsidiaries, servants, or employees. The actions of these defendants and each of their agents, subsidiaries, servants,

4

and employees as set forth herein are imputed to each of them, jointly and severally. Both defendants operate as a joint enterprise and, as a result, each defendant is liable for the other's actions and inactions with regard to the operation of Select Specialty.

9.    The Defendant, Stephen J. Heyman, M.D., is a physician and medical care provider who, at all times relevant, was under contract with Select Specialty as the supervising physician for Charles Johnson. This Defendant maintains an office at 300 20th Avenue, North, Nashville, Tennessee 37203.


## IV.
## FACTS

10.  On January 9, 2006, Charles Johnson received multiple trauma wounds while a passenger in a vehicle in a motor vehicle accident. He was initially treated at Bowling Green Medical Center and transferred to Vanderbilt Medical Center for treatment of closed head injuries, an occipital fracture and other injuries.

11.  On January 26, 2006, he was transferred to Select Specialty for rehabilitation.

12.  At the time of his admission to Select Specialty, defendants were aware of Mr. Johnson's medical condition and the level of care and attention he required.

13.  Upon his admission to Select Specialty, Mr. Johnson was placed under the direct supervision and care of Dr. Stephen J. Heyman.

14.  At all times relevant the Defendant, Select Specialty, held itself out to

5

the public and also represented to the Tennessee Department of Human Services that it was:

   a.  skilled in the performance of nursing, rehabilitative, and other medical support services;

   b.  properly staffed, supervised, and equipped to meet the total needs of its patients;

   c.  able to specifically meet the total medical, rehabilitative and physical therapy needs of its patients; and

   d.  in compliance on a continual basis with all rules, regulations, and standards established for hospitals.

15.  Defendants failed to exercise the proper level of care in the discharge of their obligations as a medical care provider to Charles Johnson. As a consequence, Charles Johnson suffered serious injuries, extreme pain and suffering, mental anguish, severe emotional distress and trauma, disability, degradation, loss of enjoyment of life, loss of quality of life and personal dignity, humiliation, fright, and ultimately, death. The severity of the Defendants' recurrent negligent treatment of Charles Johnson while under the care of Select Specialty accelerated the deterioration of his health and physical condition beyond that caused by the normal aging process and resulted in the physical and emotional trauma described below:

   a.  Development of severe decubitus ulcers;

b. Severe pain and suffering from the breakdown of tissue from pressure and resulting decubitus ulcers;

c. Dead and necrotic tissue extending to muscle and bone tissue and requiring surgical debridement;

d. Sepsis and other blood-borne toxic infections that resulted secondary to the loss of skin integrity which thereby became a sacral portal of entry for multiple organisms and resulted in the development of a process that caused rapid, extensive tissue damage and required surgical debridement;

e. Shock and septic shock from the infected pressure ulcers;

16. The Defendants Select Specialty and Dr. Heyman deviated from the standard of care required for the treatment of a patient with Mr. Johnson's known medical condition and vulnerabilities. These Defendants' deviation from the applicable standard of care include, by illustration and not limitation, the following:

a. failure to follow their plan of care and prevent skin breakdown by providing the appropriate pressure-reducing bed and chair surfaces and by turning Mr. Johnson at least every two hours while in bed, and every one hour while up in chair;

b. failure to do skin assessments every 12 hours as stated in their "Pressure Ulcer Prevention Plan;"

c.    failure to document complete wound assessments as required for the accurate assessment of progress and/or identification of decline;

d.    failure to recognize and identify the deterioration of the pressure sores as they became visibly evident; and

e.    failure to implement new interventions to treat the pressure sores when current treatments were not working;

17.    Plaintiffs allege and aver that by implementing simple prevention procedures, such as an appropriate turning and/or re-positioning program for this high risk patient who was totally dependent on his care givers for all position changes, as well as the use of pressure-reducing surfaces for his bed and chair, the pressure sores and resulting skin deterioration could have been avoided;

18.    On all occasions complained of herein, Charles Johnson was under the care, supervision, and treatment of the defendants' agents and/or employees; and the injuries complained of herein were proximately caused by the acts and omissions of the defendants.

19.    Defendants Select Specialty and Select Medical failed to discharge their obligations of care to Charles Johnson with a conscious disregard for his rights and safety. At all times mentioned herein, the defendants, through their corporate officers and administrators, had knowledge of, ratified and otherwise authorized all of the acts or omissions that caused the injuries suffered by Charles Johnson, including the hiring and retention of unqualified and untrained nursing

8

staff. Defendants knew that the nursing staff at Select Specialty, because of the poor staffing levels, could not provide even the minimum standard of care to patients who suffered from Mr. Johnson's susceptibilities. As a consequence, Charles Johnson's health and well being deteriorated unnecessarily.

20. Motivated by business concerns and maximization of corporate profits, the Defendants Select Specialty and Select Medical allowed staffing levels to fall below that needed to provide competent and efficient care to patients suffering from Charles Johnson's condition. Specifically, the defendants intentionally and with knowing and reckless disregard for the consequences of their actions, caused staffing levels and nurse-to-patient ratios to be set at a level where the personnel on duty at any given time could not reasonably attend to the needs of their respective assigned patients, and were impaired in their ability to adequately assist with feeding and liquid intake, assist with toileting, cleaning, bathing and repositioning residents.

## V.
## CAUSES OF ACTION

### COUNT I
### MEDICAL MALPRACTICE

21. Plaintiffs incorporate by reference herein the allegations contained in ¶¶ 1 through 20, and do further allege and aver as follows:

22.   The defendants Select Specialty and Stephen J. Heyman, M.D. failed to meet the applicable standards of care and breached their duty of care to Charles Johnson through their treatment, abuse, and neglect.  These defendants' breach of their duties include, but are not limited to, one or more of the following acts and omissions:

a.  the failure to provide sufficient numbers of qualified and trained personnel, including nurses, licensed practical nurses, certified nurse assistants, and medication aides (hereinafter "nursing personnel") to meet the total needs of Charles Johnson;

b. the failure to adequately assess, evaluate, and supervise nursing personnel to insure that Charles Johnson received appropriate nursing care in accordance with policy and procedures, the rules of the Tennessee Department of Human Services and the United States Centers for Medicare and Medicaid Services (CMS);

c.  the failure to provide and assure an adequate nursing care plan based on the needs of Charles Johnson and other patients at Select Specailty;

d.  the failure to assure that an adequate nursing care plan for Charles Johnson was followed by nursing personnel;

e.   the failure to provide care, treatment, and medication in accordance with physician' s orders;

f.  the failure to maintain medical records on Charles Johnson in accordance with accepted professional standards and practices that are

complete, accurately documented, readily accessible, and systematically organized with respect to:

     i.   the diagnosis, care and treatment of Charles Johnson; and

    ii.   the assessment and establishment of appropriate care plans and treatment;

g.  the failure of the nursing staff and the attending physician to note and address significant changes in his physical condition;

h.  the failure of the nursing staff and the attending physician to adequately and appropriately monitor Charles Johnson and recognize significant changes in his health status;

i.  the failure to keep Charles Johnson free from infection;

j.  the failure to ensure that Charles Johnson received timely and accurate care assessments, prescribed treatment, medication, necessary supervision, and timely nursing and medical intervention due to a significant change in condition;

k.  the failure to provide Charles Johnson with adequate and appropriate nursing care, treatments, and medication for the prevention of pressure ulcers;

l.  the failure to provide Charles Johnson with adequate assessment and treatment for prevention of pressure ulcers;

m. the failure to ensure that Charles Johnson received an adequate assessment and treatment to prevent infection of pressure ulcers and to treat the infection once it became apparent;

n. the failure to ensure that Charles Johnson received an adequate assessment and treatment for the severe pain he suffered as a result of pressure ulcers and subsequent infection of those bedsores and/or pressure ulcers;

o. the failure to adequately screen, evaluate, and check references, test for competence, and use ordinary care in selecting nursing personnel;

p. the failure to assign nursing personnel duties consistent with their education and experience based on:

     i. Charles Johnson's medical history and condition, nursing, and rehabilitative needs;

     ii. the characteristics of the patient population receiving treatment in the area of the facility where Charles Johnson was a patient; and

     iii. the nursing skills needed to provide appropriate care to such patient population;

q. the failure to establish, publish, and adhere to policies for nursing personnel concerning the care and treatment of patients with nursing, medical, and psychosocial needs similar to those of Charles Johnson;

r. the failure to adopt adequate guidelines, policies, and procedures for:

   i. investigating the relevant facts, underlying deficiencies, or licensure violations or penalties found to exist by state and federal survey agencies;

   ii. determining the cause of any such deficiencies, violations, or penalties; and

   iii. the method and means for correcting deficiencies, licensure violations or penalties found to exist;

s. the failure to adopt guidelines, policies, and procedures for determining whether there are sufficient numbers of nursing personnel which includes nurses, licensed practical nurses, certified nursing assistants, medical assistants, and other staff to:

   i. provide 24 hour nursing services;

   ii. meet the needs of patients who are admitted to or remain in the facility;

   iii. meet the total nursing needs of patients; and

   iv. place a moratorium on admissions when sufficient staff was not available to properly care and treat the patients already admitted;

t. the failure to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in patient care;

u. the failure by members of the governing body to discharge their legal and lawful obligation by:

      i.  assuring that the rules and regulations designed to protect the health and safety of patients, such as Charles Johnson, as promulgated by the Tennessee Department of Human Services and the United States CMS, were consistently complied with on an on-going basis;

      ii.  assuring that the patient care policies were consistently complied with on an on-going basis;

      iii.  assuring that the policy and procedure manuals were updated and modified to address problems that arose at the facility; and

      iv.  responsibly assuring that appropriate corrective measures were implemented to correct problems concerning inadequate resident care;

23.  A reasonably prudent hospital, operating under the same or similar conditions, and physician would not have failed to provide the care listed above. Each of the foregoing acts or omissions on the part of the defendants was a proximate cause of Charles Johnson's injuries, which injuries were reasonably foreseeable by the defendants.

24.    The defendants were negligent, grossly negligent, willful, wanton, reckless and/or malicious in breaching the duty they owed to Charles Johnson.

25.   As a result of the defendants' conduct, Charles Johnson suffered physical and mental injuries, including physical and mental pain and suffering, emotional distress, additional medical treatment and ultimately, death.

**COUNT II**
**<u>NEGLIGENCE</u>**

26.   Plaintiffs incorporate by reference herein the allegations contained in ¶¶ 1 through 25, and do further allege and aver as follows:

27.   The defendants owed a non-delegable duty to patients, including Charles Johnson, to hire, train, and supervise employees so that such employees deliver care and services to patients in a safe and beneficial manner in order to assist patients in attaining and maintaining the highest practicable level of physical and mental well-being.  The defendants were under a duty to ensure that their employees exercised reasonable care and rendered the care and services that a reasonably prudent and similarly situated employee would render.

28.   The defendants' conduct, as set forth in Count I of this Complaint, constitutes a breach of their duty of care to Charles Johnson.

29.   As a direct and proximate cause of the defendants' breach of duty, Charles Johnson suffered severe injuries and damages, which injuries were reasonably foreseeable by the defendants, and ultimately, death.

## COUNT III
## BREACH OF CONTRACT

30.     Plaintiffs incorporate by reference herein the allegations contained in ¶¶ 1 through 31, and do further allege and aver as follows:

31.     On becoming a patient, Charles Johnson entered into an expressed or implied contract with the defendants Select Specialty and Select Medical where, for consideration paid by him, or on his behalf, the defendants were to provide him nutrition, personal care, nursing care, a place to rehabilitate from his injuries and other medical services. By the terms of such contract, or admission agreement, the defendants expressly or implicitly agreed or warranted to use reasonable care and diligence in providing nursing care and medical services to Charles Johnson and to exercise reasonable care in maintaining his general health and welfare. Pursuant to this contract, Charles Johnson was entrusted to the defendants' sole custody and care.

32.     These defendants' conduct, as set forth in Count I of this Complaint, constitutes a breach of the terms of the contract between Charles Johnson and the defendants, which breach caused Charles Johnson to suffer extreme pain and suffering, unnecessary medical treatments, disfigurement, humiliation, numerous infections and to not receive the benefit of his bargain.

16

**COUNT IV**
**VIOLATION OF THE**
**TENNESSEE ADULT PROTECTION ACT**

33.     Plaintiffs incorporate by reference herein the allegations contained in ¶¶ 1 through 32, and do further allege and aver as follows:

34.     The defendants had a statutorily mandated responsibility, pursuant to Tenn. Code Ann. § 71-6-101, *et seq*., to protect elderly adults under its care, such as Charles Johnson, from abuse or neglect.

35.     The defendants' responsibilities to Charles Johnson were non-delegable and the defendants are directly liable for deprivations and infringements by any person or entity under the defendants' control, direct or indirect, including its employees, agents, consultants, and independent contractors, whether in-house or outside entities, individuals or agencies or caused by Defendants' policies, written or unwritten, or common practices.

36.     The defendants' actions, as outlined in Count I of this Complaint, constituted willful abuse and neglect of Charles Johnson, in violation of Tenn. Code Ann. §§ 71-6-117 and 71-6-119, causing Charles Johnson to suffer severe physical and mental injuries, including physical and mental pain and suffering, emotional distress, additional medical treatment and ultimately, death.

37.     As a result of the defendants' violations of these provisions, pursuant to Tenn. Code Ann. § 71-6-120, the plaintiffs have the right to recover compensatory damages.

17

38.  Further, the defendants' actions in this case were intentional, entitling the plaintiffs to recover punitive damages and reasonable attorney's fees, pursuant to Tenn. Code Ann. § 71-6-120.

## COUNT V
## WRONGFUL DEATH

39.  Plaintiffs incorporate by reference herein the allegations contained in ¶¶ 1 through 38, and do further allege and aver as follows:

40.  The defendants' conduct, as set forth in Count I of this Complaint, all of which was grossly negligent, willful and wanton, reckless, malicious, and/or intentional, directly and proximately caused the death of Charles Johnson.

41.  As an additional result of the defendants' conduct, as set forth in Count I of this Complaint, Charles Johnson suffered personal injury including excruciating pain and suffering, mental anguish, emotional distress, disfigurement and humiliation.

## COUNT VI
## LOSS OF SPOUSAL CONSORTIUM

42.  Plaintiffs incorporate by reference herein the allegations contained in ¶¶ 1 through 41, and do further allege and aver as follows:

43.  As a result of the defendants' conduct, thereby causing the death of Charles Johnson, his spouse, Barbara Johnson has suffered the loss of her husband's love, affection, attention, care, protection and companionship, entitling her to an award of damages for same.

18

## COUNT VI
## <u>LOSS OF PARENTAL CONSORTIUM</u>

44.    Plaintiffs incorporate by reference herein the allegations contained in ¶¶ 1 through 43, and do further allege and aver as follows:

45.    As a result of the defendants' conduct, thereby causing the death of Charles Johnson, his daughter, Donna Short has suffered the loss of her father's love, affection, attention, care, protection and companionship, entitling her to an award of damages for same.

46.    As a result of the defendants' conduct, thereby causing the death of Charles Johnson, his son, William Johnson has suffered the loss of his father's love, affection, attention, care, protection and companionship, entitling him to an award of damages for same.


WHEREFORE, the plaintiffs, Barbara Johnson, individually and as Executrix of the Estate of Charles Edward Johnson, Donna Short and William Johnson, pray for judgment against the defendants, Select Specialty Hospital – Nashville, Inc., Select Medical Holdings Corporation and Dr. Stephen J. Heyman, as follows:

1.    Against the Defendant SELECT SPECIALTY HOSPITAL:

a.    A judgment for compensatory damages arising out of the emotional distress and mental and physical pain and suffering, loss of enjoyment of life, medical expenses, funeral expenses, lost wages and

loss of earning capacity and pecuniary value of life all in the amount of $1.5 million;

b.        A judgment awarding damages to Barbara Johnson for the loss of spousal consortium in the amount of One Hundred Thousand ($100,000);

c.        A judgment awarding damages to Donna Short for the loss of parental consortium in the amount of One Hundred Thousand ($100,000);

d.        A judgment awarding damages to William Johnson for the loss of parental consortium in the amount of One Hundred Thousand ($100,000);

e.        A judgment awarding punitive damages in the amount of $1.5 million;

f.        A trial by jury on all issues so triable;

2.        Against the Defendant SELECT MEDICAL HOLDINGS CORPORATION:

a.        A judgment for compensatory damages arising out of the emotional distress and mental and physical pain and suffering, loss of enjoyment of life, medical expenses, funeral expenses, lost wages and loss of earning capacity and pecuniary value of life all in the amount of $1.5 million;

b.        A judgment awarding damages to Barbara Johnson for the loss of spousal consortium in the amount of One Hundred Thousand ($100,000);

c.        A judgment awarding damages to Donna Short for the loss of parental consortium in the amount of One Hundred Thousand ($100,000);

d.        A judgment awarding damages to William Johnson for the loss of parental consortium in the amount of One Hundred Thousand ($100,000);

e.        A judgment awarding punitive damages in the amount of $1.5 million;

f.        A trial by jury on all issues so triable;

3.     Against the Defendant STEPHEN J. HEYMAN, M.D.:

a.        A judgment for compensatory damages arising out of the emotional distress and mental and physical pain and suffering, loss of enjoyment of life, medical expenses, funeral expenses, lost wages and loss of earning capacity and pecuniary value of life all in the amount of $1.5 million;

b.        A judgment awarding damages to Barbara Johnson for the loss of spousal consortium in the amount of One Hundred Thousand ($100,000);

c.      A judgment awarding damages to Donna Short for the loss of parental consortium in the amount of One Hundred Thousand ($100,000);

d.      A judgment awarding damages to William Johnson for the loss of parental consortium in the amount of One Hundred Thousand ($100,000);

e.      A judgment awarding punitive damages in the amount of $1.5 million;

f.      A trial by jury on all issues so triable;


4.    All costs expended herein, including a reasonable attorney's fee, and any and all other relief to which the plaintiffs may be entitled.

                    **ENGLISH, LUCAS, PRIEST & OWSLEY, LLP.**
                    1101 College Street, P.O. Box 770
                    Bowling Green, Kentucky 42102-0770
                    Phone:  (270) 781-6500

                    _____
                    KURT W. MAIER, Esq.


                    **BRENTWOOD LAW OFFICES, P.L.L.C.**
                    5214 Maryland Way, Suite 402
                    Brentwood, TN.  37027
                    (615) 376-2600


                    _____s/ Larry L. Crain_____
                    LARRY L. CRAIN, Esq.

22